UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


LOUIS F. LINDSLEY, JR. ET AL. | CIVIL ACTION
VERSUS | NO: 07-6569
BELLSOUTH TELECOMMUNICATIONS, INC. ET AL. | SECTION: "S" (3)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment as to Louis F. Lindsley" of BellSouth Telecommunications, Inc. and Directional Road Boring, Inc. is **GRANTED**. (Document #66.)

### I. BACKGROUND

Louis F. Lindsley, Louis Lindsley, Jr., Kevin L. Bradke, Edward G. Bradke, Steve Flint, David Powell, and Carroll Lawson filed a collective action complaint against BellSouth Telecommunications, Inc. (BellSouth), Robert J. Parker d/b/a Parker Communications (Parker), and Directional Road Boring, Inc. (Directional), pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

The plaintiffs worked as splicers repairing the telephone network in New Orleans after Hurricane Katrina. Parker contracted with the splicers for a project that would require

approximately 84 hours of work each week at an hourly rate of $68 and a $50 *per diem*. The splicers allege that they were not paid for all hours worked in excess of 40 hours a week in accordance with the FLSA. The plaintiffs seek to represent all employees who are similarly situated in the jobs performed and the manner of compensation.

The court granted the plaintiffs' motion for conditional collective action certification and for "court-supervised notice to others similarly situated to opt-in." The court authorized the form of the notice to be sent to members of the potential class. On September 8, 2008, the plaintiffs filed thirteen consent-to-join forms.

BellSouth and Directional filed a motion for summary judgment as to plaintiff, Louis F. Lindsley, the only plaintiff who has been deposed, asserting that he is an independent contractor and not subject to the FSLA. The plaintiffs filed a motion to strike the motion for summary judgment. The court denied the motion to strike and chose Lindsley as a test plaintiff to resolve the issue of employee versus independent-contractor status.

## II. DISCUSSION

**A. Legal standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548,

2

2552 (1986).

**B. FLSA**

Lindsley contends that, pursuant to the FLSA, he and other similarly-situated splicers are entitled to overtime compensation for hours worked in excess of 40 hours a week from September 1, 2005 to the present. BellSouth and Directional contend that Lindsley is an independent contractor, and he was not their employee.

"The definition of employee under the FLSA is particularly broad." Hopkins v. Cornerstone America, 2008 WL 4542491 *2 (5th Cir. 2008). To determine if a worker is an employee, the court focuses on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." Id. The court focuses on five non-exhaustive factors: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." Id. No factor is determinative, and each is applied to gauge the economic dependence of the alleged employee. Id.

The material facts are essentially undisputed. The parties present the following facts in support of the factors to determine Lindsley's employment status.[1]

---

[1] Lindsley argues that there are factual differences between his case and Thibault v. BellSouth Telecommunications, Inc. et al., No. 07-0200. The motion for summary judgment is analyzed based on the application of the facts of this case to the factors to determine if a worker is an employee under the FSLA.

**1. Control**

Following Hurricane Katrina, Lindsley contacted Parker to obtain work splicing damaged telephone lines. Once Lindsley arrived in the New Orleans area, he joined other splicers who reported to a BellSouth "yard" on Airline Drive each day at 6:30 a.m. The splicers received instructions from the Directional supervisors either verbally or by means of a schematic. They attended safety meetings regarding testing of electrical lines and the proper use of safety equipment. The splicers worked in ten-man crews in an assigned area, and the assigned work was to be performed within a certain time frame. Lindsley kept daily and weekly time sheets and presented them to the Directional supervisor every Friday for payment by Parker.

The splicers traveled in a caravan to the worksite each day led by the Directional supervisors. At times, the supervisors remained at the worksite, but Lindsley stated that Directional supervisors did not tell him how to do his job. Lindsley testified that, although he never actually saw a Directional supervisor inspect his work, he knew that the work the splicers performed was inspected because some splicers had to return to correct problems with their work. A BellSouth supervisor, Chris Floyd, would go to the worksite every other day.

**2. Investment**

As a contract worker, Lindsley was required to provide his own tools and equipment. His tools consisted of a splicing machine, a hand-crimp machine, voltage tester, meter, tone, probe, cord test with alligator clips, a pressure gauge, a cable saw, a lineman's hammer, a splicer's knife, long nose pliers, obligues (a cutter), a pouch, a probe, a punch bond, a ruler, scissors, miscellaneous screwdrivers, a shovel, a sign, a safety strap, a wrench a manhole rack, a

blower, a pump, a gas detector, a manhole hook, lights, a ladder or a bucket truck, a sling, a throw master, rubber gloves, leather gloves, a hard hat, and a vest. In his deposition, Lindsley valued the tools at approximately $10,000. Lindsley also had a bucket truck, for which he paid $24,000 in 1999. In November 2005, Lindsley's wife bought a "travel trailer" and sent it to Des Allemands in order that Lindsley might have a place to live.

### 3. Worker's opportunity for profit and loss

Lindsley is responsible for finding his own work opportunities in the splicing business. He pursues business by placing calls to companies or other splicers; and at other times, he receives the call from his business contacts. The work he obtains varies as to the rate of pay by the unit or the hour, overtime, and whether he received a *per diem*. Lindsley controls his profit and loss by managing the expenses incurred in conducting his business.

### 4. Skill and initiative

In 1978, Lindsley trained as a splicer, working with a friend for approximately one year. Because of Lindsley's experience and training, he was capable of performing the splicing job without supervision or instruction.

### 5. Permanency

Lindsley testified that, prior to the work as a result of Hurricane Katrina, he had performed work as a result of storm damage on four prior occasions from 1983 to 2002 in Texas and North Carolina. Lindsley also performed splicing work in Japan for Milcom Systems for almost two years, in California, and in Ohio. On each of these occasions, Lindsley understood that it was not a permanent position and that the work would come to an end.

On January 8, 2006, Parker laid off Lindsley. His total earnings from Parker through January 2006 were $69,574. On January 16, 2006, Lindsley went to work for Directional.

**6. Other factors**

Lindsley testified that he performed contract work from 1969 until 1982. In 1982, he was employed by GTE; but in March 1983, he was laid off and resumed work as a contractor. Lindsley stated in his deposition that he has not been an employee of any company since 1983. Lindsley considers himself to be "self-employed," and pays a self-employment tax and estimated taxes. He takes allowable deductions on his income tax return for business expenses and depreciation on tools and equipment that he uses in his contracting work.

As in most employee-status cases, there are facts weighing in favor of employee status and independent contractor status. See Carrel v. Sunland Construction, Inc., 998 F.2d 330, 334 (5th Cir. 1993). Weighing in favor of employee status are the facts that the defendants dictated Lindsley's schedule, his hourly rate, and the number of hours he worked. The remaining factors, however, weigh in favor of independent-contractor status. Lindsley was an experienced splicer, who had worked for many years in several states and in Japan. He presented at the worksite with his own tools and equipment, and he required instruction and supervision only as to the assignment to be performed and his presence at the worksite. Lindsley had a large investment in his bucket truck, his tools and equipment, and a "travel trailer" in which he lived while working in the New Orleans area. Lindsley obtained employment by following up on word-of-mouth leads from other splicers and establishing a network whereby businesses would contact him. Lindsley decided whether to accept or reject an opportunity, and he controlled his profit margin

by managing his expenses. There is no indication that Lindsley considered himself to be an employee or that he perceived his contract to perform the splicing work as permanent. He paid self-employment taxes and estimated taxes, and he availed himself of deductions for business expenses and depreciation on his income tax return.

Accordingly, Lindsley's status as a splicer is consistent with that of an independent contractor. The evidence establishes that Lindsley is not economically dependent upon the defendants, and he does not meet the definition of employee under the FLSA. There are no disputed issues of material fact, and the motion for summary judgment of BellSouth and Directional is granted.

New Orleans, Louisiana, this 27th day of February, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**